1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          NORTHERN DISTRICT OF CALIFORNIA
10          SAN JOSE DIVISION
11

ROSA ORTEGA,                                    )    Case No.: 12-CV-05504-LHK
                                                )
            Plaintiff,                           )
        v.                                       )    ORDER DENYING DEFENDANT NEIL
                                                )    JONES FOOD COMPANY'S MOTION
THE NEIL JONES FOOD COMPANY; JOSE               )    FOR SUMMARY JUDGMENT
MANZO; and DOES 1-10, inclusive,                )
                                                )
            Defendants.                          )
                                                )
_____            )

        Plaintiff Rosa Ortega ("Ortega") filed this action against her former employer the Neil

Jones Food Company ("Neil Jones") and one of her former co-workers Jose Manzo ("Manzo")

alleging that Ortega experienced a hostile work environment due to severe and pervasive sexual

harassment. Ortega contends that Neil Jones and Manzo acted in violation of California's Fair

Employment and Housing Act ("FEHA") and that Manzo engaged in gender violence and sexual

battery in violation of California law. Before the Court is Neil Jones' Motion for Summary

Judgment. *See* ECF No. 68. Ortega has filed an Opposition, and Neil Jones has filed a reply. *See*

ECF Nos. 72–73. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for

resolution without oral argument and hereby VACATES the hearing on this Motion set for January

23, 2014, at 1:30 p.m. The Case Management Conference scheduled for January 23, 2014, at 1:30

p.m. remains as set. The Court, having considered the record in this case, applicable law, and

parties' briefs, DENIES Neil Jones' Motion for Summary Judgment for the reasons stated below.

1

I.      **BACKGROUND**

    A.      **Factual Background**

        Ortega and Manzo were employees of Neil Jones. The two were seasonal workers at Neil Jones' tomato processing plant in Hollister. They worked from July through mid-October with no days off. Ortega's employment at Neil Jones commenced in 2002 or 2003 and terminated at the end of the 2012 season due to a knee injury. ECF No. 68, Ex. A ("Ortega Depo.") at 11. Ortega's duties involved cleaning the Neil Jones facility, and she was supervised by Sylvia De Marco ("De Marco"), the sanitation supervisor. *Id.* at 12. Manzo's first season at Neil Jones was in 1991. Both Manzo and Ortega were members of a union, which had a grievance and arbitration process to mediate disputes between Neil Jones and union members.

        Ortega's job duties included using pressure washers to clean parts of the Neil Jones facility. ECF No. 70 ("Ortega Decl.") ¶ 5. As such, during the workday, Ortega changed in and out of rain suits to protect her from the washers. *Id.* Ortega and other female employees utilized an isolated section of the facility to change in and out of the suits. *Id.* Such privacy was necessary because employees' clothes under the rain suits routinely were so wet that they clung to employees' bodies, thus exposing employees' buttocks and breasts. *Id.* Accordingly, after female employees changed out of the rain suits, they went to a bathroom to change into dry clothes. *Id.*

        Ortega began noticing that Manzo, a male co-worker, was coming around the rain suit changing area during the 2009 season. *Id.* ¶ 9. About three times a week, Manzo would come and look at Ortega and her female co-workers as they were changing out of the rain suits in the private area. *Id.* Ortega began to complain to De Marco about Manzo's presence in this area. *Id.* ¶ 10; Ortega Depo. at 20. Specifically, Ortega complained ten times about Manzo's activities between 2009 and 2012. Ortega Decl. ¶ 10; Ortega Depo. at 21. De Marco indicated that she would talk to Manzo and told Ortega not to worry about Manzo because "he is just an old man." Ortega Decl. ¶ 10. Meanwhile, in 2010, one of Ortega's female colleagues, Elizabeth Garay, also complained about Manzo to De Marco. ECF No. 68, Ex. D ("De Marco Depo.") at 8–9. De Marco, after witnessing Manzo going to the area where female employees were changing, asked Manzo why he was going there. *Id.* at 9. Manzo told De Marco that his gloves were stored in that area. *Id.* De

1    Marco instructed Manzo to find a different spot for his gloves and reported the incident to Manzo's

2    supervisor and to her own supervisor. *Id.*

3        At the same time, during the 2009 to 2012 seasons, Manzo began following Ortega around

4    the workplace. Ortega Decl. ¶ 11. Ortega shooed Manzo away and admonished him to go back to

5    his work area. *Id.* Ortega complained to De Marco about Manzo's following of Ortega several

6    times in 2011 and 2012. *Id.* ¶¶ 12–16. De Marco instructed Ortega not to worry about Manzo

7    because he was "an old man" and stated that she had spoken to Manzo, but that Manzo would not

8    listen. *Id.* ¶¶ 13–16.

9        During the 2009 to 2012 seasons, Manzo also approached Ortega and said "Ay, Rosita"

10   several times. During the 2009 season, this occurred three times. Ortega complained to De Marco,

11   who said she would talk to Manzo. *Id.* ¶¶ 17, 19–20. When the incident reoccurred, and Ortega

12   again complained, De Marco stated that she had already spoken to Manzo, but would speak to him

13   again. *Id.* ¶ 19. When the third incident occurred, Ortega complained to Daniel Quintana

14   ("Quintana"), who was De Marco's supervisor. Quintana told Ortega that he and De Marco would

15   talk to Manzo. *Id.* ¶ 20. The "Ay, Rosita" comments occurred seven times in 2010, three times in

16   2011, and two times in 2012. *Id.* ¶¶ 21–23. Ortega complained to De Marco nine times, and De

17   Marco repeatedly instructed Ortega to ignore Manzo because he was an "old man." *Id.*

18       On August 20, 2012, at approximately 2 p.m., while Ortega was washing with a pressure

19   hose, Manzo walked up behind her, brushed his genitals up against her buttocks, and whispered

20   "Ay, Rosita" in her ear. De Marco Depo. at 24; Ortega Depo. at 20–23. Ortega began crying, and a

21   co-worker came up to her and said that the co-worker could not believe that "he just did that to

22   you." Ortega Decl. ¶ 24. Immediately after the incident, Ortega complained to De Marco. Ortega

23   Depo. at 25–26. De Marco stated that she "didn't know what to do," to which another supervisor

24   who was in De Marco's office stated, "[y]ou need to do something about this." Ortega Decl. ¶ 24.

25       Ortega then went to the office of the Human Resources Manager, Judy Vanderpool

26   ("Vanderpool") along with a Human Resources Clerk, who served as an interpreter. Ortega Depo.

27   at 26–27. Ortega complained about the incident, through the interpreter, to Vanderpool. *Id.* Ortega,

28   who did not know Manzo's last name, identified him using employee badge photos provided to

**United States District Court**
For the Northern District of California

3

her. *Id.* Vanderpool asked if Ortega had complained to De Marco. Ortega Decl. ¶ 25. Ortega

answered affirmatively, and Vanderpool had asked if De Marco had prepared a written report. *Id.*

When Ortega indicated that De Marco had not prepared such a report, Vanderpool indicated that

she could not take any action without such a report. *Id.* Meanwhile, De Marco conferred with

Manzo's supervisor. ECF No. 68, Ex. E ("Avila Depo.") at 7–8.

The next morning, Vanderpool called a meeting with Manzo, his supervisor, and another

manager, who served as Manzo's interpreter. *Id.* at 9–10. Vanderpool informed Manzo of Ortega's

complaint, and read him a written warning that Vanderpool had prepared. *Id.* at 10. The warning

stated that Neil Jones has "had prior complaints from female workers that you stare at them and it

makes them uncomfortable." ECF No. 71, Ex. 2. Vanderpool suspended Manzo for two days and

placed him on probation for the remainder of the season because, "it seemed apparent that [Ortega]

was very upset and *something took place.*" *Id.* (emphasis added); ECF No. 68, Ex. B ("Vanderpool

Depo.") at 17. Vanderpool admonished Manzo not to disclose the nature of their conversation.

Avila Depo. at 11. Manzo denied the allegations, but accepted the punishment. Vanderpool Depo.

at 17, 35.

The next day, Ortega complained to Vanderpool that she disagreed with the level of

punishment meted out on Manzo. *Id.* at 15–16. Ortega also informed Vanderpool of previous

incidents with Manzo. *Id.* at 11. Vanderpool inquired as to why Ortega did not report these prior

incidents to Vanderpool. *Id.* Ortega contends that she was told at her orientation that such

complaints were to go to her direct supervisor, which is why she did not report incidents to

Vanderpool. Ortega Decl. ¶ 26. Vanderpool continued the investigation, but could not substantiate

Ortega's allegations with respect to previous incidents. Vanderpool Depo. at 15–16. Vanderpool

later informed Ortega that Neil Jones was unable to substantiate Ortega's allegations with respect

to the incidents prior to August 20, 2012. *Id.*

Ortega contends that she was harassed by other co-workers as a result of the incident with

Manzo. Ortega Depo. at 29. Specifically, one co-worker asked Ortega whether Ortega "was the one

who had her ass grabbed" and another co-worker mimicked Manzo grabbing Ortega's buttocks as

Ortega removed her rain suit. Ortega Decl. ¶ 27–28. Furthermore, Ortega contends that she

4

**United States District Court**
For the Northern District of California

1    continues to encounter Manzo. Ortega Depo. at 34. Specifically, three days after the incident,

2    Manzo and Ortega were on the same stairwell, where Manzo looked at Ortega directly and

3    laughed. Ortega Depo. at 34; Ortega Decl. ¶ 28. Moreover, Ortega had to see Manzo every day for

4    the month following Manzo's suspension because they worked in the same area. Ortega Decl. ¶ 29.

5    Manzo stared at Ortega and laughed at her. *Id.*

6        Ortega contends that she has suffered severe emotional distress as a result of Manzo's

7    three-season-long harassment. *Id.* ¶ 31. Ortega has had difficulty sleeping, nightmares, and now

8    fears men, including her husband. *Id.* Ortega also experienced severe nervousness at work. *Id.* ¶ 32.

9    She cried at work and had difficulty concentrating on tasks that she had been assigned. *Id.*

10       **B.    Procedural History**

11       Ortega filed a complaint against Neil Jones with the California Department of Fair

12   Employment and Housing and requested an immediate right-to-sue notice, which the agency

13   granted on September 4, 2012. Compl., Ex. A. On September 19, 2012, Ortega filed the Complaint

14   in the instant litigation in the California Superior Court for San Benito County. *See* Compl. Neil

15   Jones, with the consent of Manzo, removed the action to this Court under diversity jurisdiction. *See*

16   ECF No. 1. On February 13, 2013, this Court issued a case management order, under which fact

17   discovery was to close on October 17, 2013, and the parties were limited to 15 depositions per side.

18   ECF No. 34. The parties exchanged discovery in accordance with the Court's order. Ortega was

19   deposed on May 5, 2013. On December 11, 2013, Neil Jones filed the instant Motion for Summary

20   Judgment. ECF No. 68. On December 24, 2013, Ortega filed her Opposition, and attached, among

21   other documents, an affidavit from Ortega herself. ECF Nos. 69–72. On January 2, 2014, Neil

22   Jones filed a Reply. ECF No. 73.

23   **II.    LEGAL STANDARD**

24       Summary judgment is appropriate if, viewing the evidence and drawing all reasonable

25   inferences in the light most favorable to the nonmoving party, there are no genuine disputed issues

26   of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a);

27   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it "might affect the

28   outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if

United States District Court
For the Northern District of California

5

there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative," the court may grant summary judgment. *Id*. at 249–50 (citation omitted). At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006).

The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *Celotex*, 477 U.S. at 323. To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (citation omitted). Once the moving party has satisfied its initial burden of production, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. *Id*. at 1103.

## III.    DISCUSSION

### A.    Objections to Ortega's Opposition

Before the Court turns to the merits of Neil Jones' Motion for Summary Judgment, the Court addresses Neil Jones' objections to Ortega's Opposition. In its Reply in support of the instant Motion, Neil Jones contends that much of Ortega's Opposition is procedurally improper because Ortega raises new factual allegations therein that were not presented in Ortega's Complaint. ECF No. 73 at 2–4. Specifically, Neil Jones contends that the Complaint only alleged that Ortega had complained to her supervisors about the August 20, 2012, incident. *Id.* In contrast, Neil Jones suggests, Ortega's Opposition increases the number of alleged complaints by suggesting that Ortega complained to De Marco during the several times that Manzo said "Ay, Rosita." *Id.*

Neil Jones relies principally on *Wasco Prods., Inc. v. Southwall Techs, Inc.*, 435 F.3d 989, 990 (9th Cir. 2006), to contend that Ortega's Opposition improperly supplemented the Complaint's allegations. In *Wasco*, the plaintiff brought suit against two defendants alleging that defendants' had misrepresented the efficacy of certain products. The plaintiff sought to toll the statute of

Case No.: 12-CV-05504-LHK
ORDER DENYING DEFENDANT NEIL JONES FOOD COMPANY'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

limitations on the basis that the defendants had engaged in a civil conspiracy and, as such, that the statute of limitations did not begin to run until the last overt act in pursuit of the conspiracy had been completed. *Id.* at 989. The Ninth Circuit held that plaintiff was required to allege civil conspiracy under the heightened pleading standards of Rule 9(b) because of the underlying allegation of fraud. *Id.* at 990–92. The Ninth Circuit concluded that plaintiff could not toll the statute of limitations on the basis of civil conspiracy by merely raising the civil conspiracy issue for the first time in its opposition to defendants' motion for summary judgment. *Id.* at 992.

Neil Jones further cites *Coleman v. Quaker Oats Co.*, 232 F.3d 1271 (9th Cir. 2000). In *Coleman*, the Ninth Circuit held that a plaintiff who had in his complaint only alleged a disparate treatment age discrimination claim could not, at summary judgment, make a disparate impact claim of discrimination. *Id.* at 1292. The Ninth Circuit found that allowing plaintiffs to proceed on a disparate impact theory after the close of discovery would prejudice defendant, because discovery had proceeded on the assumption that the case was a disparate treatment case, and accordingly no discovery on defenses to disparate impact was taken. *Id.* Therefore, the Ninth Circuit held that "[t]he lack of notice on this issue central to the cause of action makes it difficult, if not impossible, for [defendant] to defend itself." *Id.* As a result, the Ninth Circuit determined that "plaintiffs, who clearly stated . . . claims of disparate treatment but sought also to pursue claims of disparate impact, were required either (1) to plead the additional disparate impact theory in their complaints, *or* (2) to make known during discovery their intention to pursue recovery on the disparate impact theory omitted from their complaints." *Id.* at 1294 (emphasis added).

Here, the Court finds that Neil Jones had ample notice that Ortega's prior complaints to De Marco were part of the basis of her hostile work environment claim for two reasons. First, the Complaint alleged that Manzo frequently watched female employees put on and take off rain suits and that he leered at a sexual manner at Ortega and other female employees on a daily basis. Compl. ¶¶ 8–10. The Complaint further stated that Manzo followed Ortega around and would say "Ay, Rosita" on a daily basis. *Id.* ¶ 11. Moreover, the Complaint alleges that Ortega's co-worker complained to De Marco about this precise behavior, *id.* ¶ 7, and that multiple women had lodged complaints regarding Manzo with supervisors at Neil Jones, *id.* ¶ 18. These allegations in the

7

United States District Court
For the Northern District of California

1    Complaint suggest that Manzo's actions prior to August 20, 2012, and Neil Jones' notice of such

2    behavior was part of the case from the case's inception. Based on these allegations, Neil Jones was

3    on notice that Manzo's history and what Neil Jones knew about that history would be central to the

4    case. Accordingly, the Court finds that this is not a case in which it would have been difficult—let

5    alone impossible—for Neil Jones to prepare its defense.

6         Second, Ortega made clear during her May 9, 2013, deposition that she had complained to

7    De Marco several times. In her deposition, Ortega stated that she complained about Manzo as early

8    as 2009 and that she complained to De Marco several times:

> Q: When was the first time that you complained to Sylvia [De Marco] about Mr. Manzo?
> A: I'm not sure. But we would always complain about that man. It wasn't just me. It was other people.
> Q: All right. Specifically you, when is the first time that you can remember complaining to Sylvia about Mr. Manzo?
> A: Let me try to remember. Because it's been a long time already. That was around – let me see. We're in 2013. Like in 2009.
> Q: And what did you tell Sylvia back in 2009 about Mr. Manzo?
> A: That he would come up to me and make comments that I didn't like.
> Q: What did Sylvia tell you when you made complaints about Mr. Manzo?
> A: She would just laugh, like if it was something cute. Oh – she would say, oh, he's old.
> Q: Can you estimate for me how many times you complained to Sylvia about Mr. Manzo prior to August of 2012?
> A: It was a lot of times. Yeah.
> Q: More than ten?
> A: I think so.

19   Ortega Depo. 20:6–21:5. Notwithstanding this explicit disclosure that Ortega had complained to De

20   Marco more than ten times in a period lasting from 2009 to 2012, Neil Jones did not follow up to

21   request additional discovery. Importantly, Ortega was deposed on May 9, 2013, and fact discovery

22   did not close until October 17, 2013, more than five months later. ECF No. 68, Ex. B. All the other

23   depositions before the Court occurred substantially after May 9, 2013. Therefore, the Court finds

24   that Neil Jones would not be prejudiced by the Court's consideration of Ortega's complaints

25   despite the fact that these complaints were not explicitly mentioned in Ortega's Complaint. Rather,

26   Neil Jones could have pursued discovery and prepared a defense in light of Ortega's statements at

27   her deposition.

28

8

United States District Court
For the Northern District of California

1    In addition to contending that Ortega's Opposition contains facts not pleaded in her

2    Complaint, Neil Jones further objects to Ortega's Opposition and Ortega's affidavit in support of

3    her Opposition on the basis that several statements contained therein are inadmissible hearsay or

4    that such statements conflict with statements Ortega made during her deposition. The Court

5    addresses each of these in turn.

6    First, Neil Jones contends that Ortega's recounting of statements made to her by

7    Vanderpool, De Marco, and Quintana are inadmissible hearsay. ECF No. 73 at 4–9. The Court

8    finds that none of these statements is hearsay because all of the statements fall within the party-

9    admission exemption to the hearsay rule. Fed. R. Evid. 801(d)(2). Under that rule, out-of-court

10   statements are admissible if the statements are offered against the party who made them. Here,

11   Vanderpool, De Marco, and Quintana were supervisors at Neil Jones, and the scope of their

12   employment included certain human resources responsibilities. All of the statements that Ortega

13   now cites were made in response to Ortega's human resources complaints. Accordingly, these

14   statements were made by Neil Jones' "agent or employee on a matter within the scope of that

15   relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). These statements are therefore non-

16   hearsay and admissible.

17   Second, Neil Jones contends that statements made in Ortega's affidavit, which was

18   submitted in support of her Opposition to the instant Motion, conflict with Ortega's earlier

19   deposition and that therefore the affidavit should be stricken as a sham affidavit. ECF No. 73 at 9–

20   11. Under the sham-affidavit rule, "a party cannot create an issue of fact by an affidavit

21   contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.* 952 F.2d 262, 266

22   (9th Cir. 1991). "[A] party who has been examined at length on deposition" may not "raise an issue

23   of fact simply by submitting an affidavit contradicting his prior testimony." *Id.* The sham-affidavit

24   rule must be "applied with caution" because "[a]ggressive invocation of the rule . . . threatens to

25   ensnare parties who may have simply been confused during their deposition testimony and may

26   encourage gamesmanship by opposing attorneys." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989,

27   998 (9th Cir. 2009). Accordingly, there are two limitations to the sham-affidavit rule. First, the

28   Court must find that the affidavit is not merely contradictory, but is actually a sham, that is the

9

United States District Court
For the Northern District of California

affidavit was designed for the purpose of creating an issue of fact. *Kennedy*, 952 F.3d at 266–67. Second, the "inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." *Van Asdale*, 577 F.3d at 998.

Here, the Court finds that Ortega's affidavit is not a sham affidavit under this standard for the reasons stated below. Neil Jones contends that several statements in Ortega's affidavit are inconsistent with the following deposition testimony:

> Q: All right. We have talked about Mr. Manzo saying, Ay, Rosita. And you said that he used to do that on a daily basis.
> A: Yes.
> Q: And then we talked about the incident that happened on August 20th when he brushed up against you. Other than those two types of conduct, has Mr. Manzo done anything else that has bothered you or disturbed you?
> A: *Well, no.* Just the thing that he was laughing at me.
> Q: And that happened one time?
> A: No.
> Q: How many times did he laugh at you?
> A: Every time I would see him.
> Q: And this is after the August 20th incident?
> A: Yes.
> Q: And you never reported those incidents?
> INTERPRETER: Can I say "those laughing incidents"?
> COUNSEL: Yes.
> THE WITNESS: No. Because by then I had my attorney.

Ortega Depo. 38:5–39:2 (emphasis added). Neil Jones contends that Ortega's statements in her affidavit that she complained to De Marco about Manzo's staring while Ortega and her female colleagues changed out of rain suits and about Manzo's following of Ortega around the workplace are inconsistent with Ortega's deposition answer "[w]ell, no" to the questions of whether anything else had bothered Ortega. ECF No. 73 at 5. The Court finds that this contradiction is insufficient to support a finding that Ortega's affidavit was a "sham." Ortega's Complaint clearly recounts the incidents regarding Manzo's staring at female employees while changing out of their rain suits. Compl. ¶ 7. Moreover, in her deposition, De Marco concedes that there were at least two complaints about Manzo's presence in the changing area. De Marco Depo. at 8–9. In addition, in other parts of Ortega's deposition, Ortega states that she lodged multiple other complaints with De Marco regarding Manzo's harassing actions. Ortega Depo. at 20 ("[W]e would always complain about that man."). Moreover, in her deposition, Ortega stated that as early as 2009, Ortega complained to de Marco that Manzo came up to Ortega and made comments that Ortega did not

10

appreciate. *Id.* at 21. In light of the fact that there were complaints about Manzo and that Ortega has consistently maintained her story that Manzo's presence in the changing area had made women uncomfortable and that Manzo made unwanted contact with and comments to Ortega, the Court cannot conclude that Ortega's affidavit statement that she complained about Manzo's presence in the changing area was made for the purpose of creating an issue of fact.

Further, Neil Jones contends that parts of Ortega's affidavit are inconsistent with the following deposition statement:

> Q: How often would [Manzo] make comments to you?
> A: Almost all the time.
> Q: Every day?
> A: Yes.

Ortega Depo. 19:16–19. Neil Jones appears to contend that Ortega's affidavit statements that Ortega had complained to De Marco about Manzo saying "Ay, Rosita" and De Marco's subsequent inaction is inconsistent with this deposition testimony. ECF No. 73 at 6–7. The Court does not see how these statements are inconsistent, let alone clearly and unambiguously so.

Moreover, Neil Jones contends that Ortega's statement in her affidavit that Vanderpool stated that she could not take any action without a written report about the August 20, 2012 incident from De Marco is inconsistent with Ortega's deposition testimony, in which she stated that Vanderpool said that she was going to investigate. *Id.* at 9. The Court finds that this inconsistency is immaterial. It is undisputed from the record that Vanderpool did in fact investigate the August 20 incident and took disciplinary action. Even if Vanderpool had stated that she could not take any action without a report from De Marco, that would not be a basis to create an issue of fact on the instant Motion. Accordingly, the question of what exactly Vanderpool said to Ortega is irrelevant to the instant Motion and therefore cannot be a basis to strike an affidavit as a sham.

Finally, Neil Jones contends that Ortega's statement in her affidavit that Manzo grabbed her hips and grinded his genitals on her buttocks is inconsistent with the following deposition testimony:

> Q: So can you describe what happened when he came up behind you? You said he brushed against your booty?
> A: Yes. He turned, and brushed his part up against my booty.

11

Q: About how long did this last?
A: I couldn't tell you. But it was just a couple of seconds.
Q: And was it – was he rough with you?
A: What do you mean rough?
Q: I mean, did he hit you hard, or was it just brushing by when you were passing?
A: He just brushed by me. And then when he was up here by my ear, I would feel his spit when he said, Ay, Rosita.
Q: Did he grab you with his hands at all?
A: No.

Ortega Depo. 23:21–24:11. The Court finds that the inconsistency here does not demonstrate that Ortega's affidavit was designed to create a fact. The facts appear to be largely consistent—not only between Ortega's deposition and affidavit, but also with Neil Jones' version of the incident. Manzo brushed up against Ortega's buttocks for a couple of seconds. Manzo further whispered into Ortega's ear, such that his face was quite close to hers, "Ay, Rosita." *See* De Marco Depo. at 24–25. The sole discrepancy is whether Manzo grabbed Ortega's hips. Whether he did so or not is immaterial to the questions presented by the underlying Motion: whether the work environment was hostile and whether Neil Jones adequately investigated the incident. Nothing in the instant Motion turns on whether Manzo grabbed Ortega's hips or only brushed up against her with his penis. Accordingly, this factual discrepancy was not created for the purpose of artificially concocting a genuine factual issue, and therefore cannot be a basis for applying the sham-affidavit rule.

In sum, many of the discrepancies between Ortega's deposition testimony and her affidavit in support of her Opposition are illusory. The remaining discrepancies are minor or irrelevant. Accordingly, the Court overrules Neil Jones' objections to Ortega's Opposition brief and her affidavit in support of her Opposition brief. Having done so, the Court now turns to the merits of the underlying Motion.

### B.    Sexual Harassment Claim

Ortega alleges that her workplace at Neil Jones was a hostile work environment plagued by sexual harassment in violation of FEHA. Cal. Gov't Code § 19200, *et. seq.* "California courts have adopted the [Title VII] standard for hostile work environment sexual harassment claims under the FEHA." *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 279 (2006). Therefore, Ortega must establish that "she was subjected to sexual advances, conduct, or comments that were (1)

12

United States District Court
For the Northern District of California

1  unwelcome, (2) because of sex, and (3) sufficiently severe or pervasive to alter the conditions of

2  her employment and create an abusive work environment." *Id.* An employer is liable for the

3  harassment where the employer "or its agents or supervisors, knows or should have known of [the

4  harassing] conduct and fails to take immediate and appropriate corrective action." Cal. Govt. Code

5  § 12940(j)(1).

6        Neil Jones moves for summary judgment on two grounds. First, Neil Jones contends that

7  the conduct about which Ortega complains was not severe or pervasive and thus does not constitute

8  an actionable hostile work environment. Second, Neil Jones contends that it engaged in an

9  adequate investigation after it was notified of the August 20, 2012, incident, and therefore that it

10  took immediate and appropriate corrective action. Accordingly, Neil Jones contends that it is not

11  liable for Manzo's conduct, even if Manzo's conduct constituted severe or pervasive harassment.

12  The Court addresses each of these contentions in turn.

13              **1.**      **Severe or Pervasive**

14        "[C]ourts have held an employee generally cannot recover for harassment that is

15  occasional, isolated, sporadic, or trivial." *Lyle,* 38 Cal. 4th at 283. "[R]ather, the employee must

16  show a concerted pattern of harassment of a repeated, routine, or generalized nature." *Id.* Courts

17  consider four factors in determining whether conduct rises to the level of severe or pervasive

18  harassment: "(1) the nature of the unwelcome sexual acts or words (generally, physical touching is

19  more offensive than unwelcome verbal abuse); (2) the frequency of the offensive encounters; (3)

20  the total number of days over which all of the offensive conduct occurs; and (4) the context in

21  which the sexually harassing conduct occurred." *Fisher v. San Pedro Peninsula Hospital,* 214 Cal.

22  App. 3d 590, 610 (1989). "Whether the sexual conduct complained of is sufficiently pervasive to

23  create a hostile or offensive work environment must be determined from the totality of the

24  circumstances." *Id.* at 609.

25        Construing the facts in favor of Ortega, as the Court must at summary judgment, the Court

26  finds substantial factual disputes regarding whether Manzo's actions constituted actionable sexual

27  harassment that was severe or pervasive. Ortega has alleged that Manzo repeatedly stared at her

28  and her female co-workers in a private changing area in which the women's bodies were exposed.

1   Ortega Depo. at 20. Further Ortega has stated that Manzo followed her around the workplace and

2   made the sexualized comment "Ay, Rosita" on multiple occasions. Ortega Decl. ¶¶ 11–23. This

3   harassment culminated in the form of sexual harassment least tolerated by our legal system—an

4   unwanted, inappropriate, sexualized touching—when Manzo brushed his genitals against Ortega's

5   buttocks and whispered "Ay, Rosita" in her ear. De Marco Depo. at 24; Ortega Depo. at 20–23.

6   And, the harassment did not end there. It continued when co-workers remarked on the incident and

7   Manzo continued to laugh at Ortega in the workplace. Ortega Depo. at 29; Ortega Decl. ¶¶ 27–28.

8   The seriousness and frequency of these incidents, viewed as a whole, create an issue of genuine

9   fact regarding whether the harassment was "occasional, isolated, sporadic, or trivial" or in contrast

10  whether it was severe or pervasive. *Lyle*, 38 Cal. 4th at 283.

11        In finding issues of fact persist, the Court notes that this case bears similarity to *McKinzy v.*

12  *National R.R. Passenger Corp.*, 836 F. Supp. 2d 1014 (N.D. Cal. 2011), a case in which Judge

13  Wilken found that factual issues precluded granting summary judgment to a defendant-employer

14  notwithstanding the employer's contention that the harassment was not severe or pervasive as a

15  matter of law. In *McKinzy*, the plaintiff, a conductor, sued her employer, Amtrak, for sexual

16  harassment based on several incidents during which plaintiff's supervisor sexually harassed her

17  while the plaintiff and her supervisor were working on Caltrain lines. *Id.* at 1020–21. The

18  supervisor approached plaintiff and asked her to have sex with him four separate times. Moreover,

19  as plaintiff was bent over working on brakes for the train, the supervisor approached her from

20  behind and touched her buttocks. *Id.* at 1020. Judge Wilken held that plaintiff's sexual harassment

21  claim under FEHA could survive summary judgment because plaintiff's testimony that she

22  "repeatedly rejected [her supervisor's] invitations to have sex" and that the supervisor "touched her

23  buttocks and nearly touched her 'private area'" was sufficient to create a genuine issue of fact as to

24  whether plaintiff suffered severe or pervasive harassment. *Id.* at 1024.

25        The Court finds that the conduct at issue in the instant case is similar to that in *McKinzy*.

26  Although Manzo did not explicitly proposition Ortega for sex, his repeated staring at her and other

27  female employees while they were changing clothes, following Ortega around the workplace, and

28  commenting "Ay, Rosita" to Ortega are sufficient to create an issue of fact on whether the

14

workplace was plagued by severe or pervasive harassment. Moreover, the physical contact in the instant case is even more egregious than that in *McKinzy*. While in *McKinzy*, plaintiff was subjected to her supervisor touching her buttocks and nearly touching her "private area," here, Ortega was subjected to Manzo brushing his penis against her buttocks while she was attempting to work. Ortega Depo. at 20–23. Accordingly, the Court finds that the totality of the circumstances is similar to the totality of circumstances in *McKinzy*. Accordingly, like *McKinzy*, there are sufficient facts to survive the Motion for Summary Judgment.

The Court finds that the cases cited by Neil Jones are distinguishable. In *Fisher*, the California Court of Appeal affirmed dismissal of a sexual harassment claim brought by a woman who had alleged only that her co-workers were harassed. The Court of Appeal stated that the plaintiff "could not have suffered from working in a hostile environment unless she was personally exposed to it." *Fisher*, 214 Cal. App. 4th at 613. Similarly, in *Beyda v. City of Los Angeles*, 65 Cal. App. 4th 511, 519 (1998), which Neil Jones also cites, the California Court of Appeal affirmed a trial court's finding that evidence of sexual harassment to the plaintiff's colleagues could not be considered in determining whether plaintiff suffered a hostile work environment, because "[h]arassment against others in the workplace is only relevant to the plaintiff's case if she has personal knowledge of it." In contrast, here, Ortega has stated that she was personally exposed to the harassing activity. Manzo stared at *Ortega* while she was changing. Manzo followed *Ortega* around the workplace. Manzo moaned, "Ay, Rosita" at *Ortega*. Manzo brushed his penis against *Ortega*.

The level of harassment in *Jones v. Flagship Intern.*, 793 F.2d 714 (5th Cir. 1986), and *Weiss v. Coca-Cola Bottling Co. of Chicago*, 990 F.2d 333, 337 (7th Cir. 1993), two cases that Neil Jones cites in which federal appellate courts have affirmed findings of no sexual harassment, falls substantially below that in this case. In *Jones*, the plaintiff was subjected to propositions for sex by her supervisor, but experienced no unwanted physical touching. Moreover, unlike the instant case, the district court order affirmed in *Jones* followed a bench trial, and therefore, the district court was able to make findings of fact. In *Weiss*, the plaintiff "alleged that [her supervisor] asked her for dates, called her a "dumb blond," put his hand on her shoulder several times, placed 'I love you'

15

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1  signs in her work area and attempted to kiss her in a bar." *Weiss*, 990 F.2d at 337. Unlike the

2  instant case, there was no actual physical touching, let alone the sort of intimate unwanted

3  sexualized touching to which Ortega was subjected. Moreover, there was nothing in *Weiss* and

4  *Jones* that was comparable to Manzo's staring at Ortega and her female employees while they

5  changed clothes. Accordingly, the Court finds these cases to be distinguishable. As did Judge

6  Wilken in *McKinzy*. Judge Wilken distinguished *Jones* on the basis that unlike *Jones*, in *McKinzy*,

7  "there [was] evidence that [plaintiff's supervisor] demonstrated greater persistence and touched

8  [plaintiff] offensively." 836 F. Supp. 2d at 1024.

9        Neil Jones further cites *Mokler v. County of Orange*, 157 Cal. App. 4th 121 (2007), a case in

10  which the California Court of Appeal reversed the denial of judgment notwithstanding the verdict

11  in favor of an employer in a sexual harassment case. Again, the Court finds that the level of

12  harassment in that case fell substantially below the level of sexual harassment to which Ortega has

13  testified in the instant mater. Specifically, in *Mokler*, a female executive director of a county office

14  on aging sued the county for sexual harassment on the basis that a member of the Board of

15  Supervisors engaged in harassing conduct. *Id.* at 126–27. The plaintiff in *Mokler* contended that the

16  Supervisor made a degrading comment about the plaintiff's marital status (by calling her an "aging

17  nun" when she told him that she was unmarried); flirted with plaintiff at a campaign party and

18  complimented her physical appearance; and put his arm around plaintiff at plaintiff's office,

19  rubbing her breast with his arm as he did so. *Id.* at 131–32. The Court of Appeal held that these

20  facts were insufficient as a matter of law to demonstrate a hostile work environment. The Court of

21  Appeal stated:

22          Norby [the Supervisor] did not supervise Mokler or work in the same building with
23          her. The first incident involved no touching or sexual remarks; rather, Norby uttered
        an isolated but boorish comment on Mokler's marital status. The second incident did
24          not occur at work, and involved a minor suggestive remark and nonsexual touching.
        The third incident involved touching when Norby placed his arm around Mokler and
25          rubbed his arm against her breast in the process. The touching, however, was brief
        and did not constitute an extreme act of harassment. Norby's request for Mokler's
26          home address was brazen, but this conduct falls short of what the law requires to
        establish a hostile work environment.

27  *Id.* at 145.

28

Case No.: 12-CV-05504-LHK
ORDER DENYING DEFENDANT NEIL JONES FOOD COMPANY'S MOTION FOR SUMMARY JUDGMENT

1    There are significant factual differences between *Mokler* and the instant case. First, the

2   alleged harassment in *Mokler* was three incidents over a period of five weeks. In contrast, here,

3   Ortega alleges many more incidents over a period of years. Second, unlike *Mokler*, here, the

4   offending actor, Manzo, worked in the same facility as Ortega, which exacerbated the frequency

5   and the intensity of the harassment. Third, all of the incidents in the instant case occurred at Ortega

6   and Manzo's workplace, unlike *Mokler*, where two out of the three incidents occurred in non-work

7   settings. Finally, and most importantly, the physical contact to which Ortega was subjected, the

8   brushing of Manzo's genitals against Ortega's buttocks, is more severe than the "brief" rubbing of

9   the Supervisor's arm against the plaintiff's breast. Considering the totality of the circumstances in

10   Ortega's favor, the Court finds that the instant case presents more severe and pervasive harassment

11   than that at issue in *Mokler.*

12    The remaining cases that Neil Jones cites are no longer good law, because these cases have

13   been superseded by the Supreme Court's decision in *Harris v. Forklift Systems, Inc.*, 510 U.S. 17

14   (1993), where the Supreme Court held that plaintiffs need not suffer serious psychological injury to

15   bring a hostile work environment claim under Title VII. The Supreme Court in *Harris* explicitly

16   rejected *Rabidue v. Osceola Refining Co.*, 805 F.2d 611 (6th Cir. 1986), and *Downes v. FAA*, 775

17   F.2d 288 (Fed Cir. 1985), which Neil Jones relies upon in the instant Motion. *See Harris,* 510 U.S.

18   at 20–21 (noting a circuit split and rejecting the views of the Sixth and Federal Circuits in *Rabidue*

19   and *Downes*). Moreover, the Ninth Circuit had rejected *Rabidue* and *Scott* even before the Supreme

20   Court did so. *Ellison v. Brady*, 924 F.2d 872, 877 (9th Cir. 1991) ("We do not agree with the

21   standards set forth in *Scott* and *Rabidue*, and we choose not to follow those decisions."). Finally,

22   the Seventh Circuit itself has recognized that its decision in *Scott v. Sears v. Roebuck & Co.*, 798

23   F.2d 210 (7th Cir. 1986), upon which Neil Jones also relies, does not survive *Harris*. *Saxton v. Am.*

24   *Tel. & Tel. Co.*, 10 F.3d 526, 533 (7th Cir. 1993) ("Thus, to the extent that our prior cases required

25   proof that the harassment 'cause[d] such anxiety and debilitation to the plaintiff that working

26   conditions were poisoned,' *Scott v. Sears, Roebuck & Co.*, 798 F.2d 210, 213 (7th Cir. 1986), they

27   have been overruled [by *Harris*]."). The Court therefore finds that the Neil Jones' reliance on these

28   cases misplaced.

United States District Court
For the Northern District of California

1    For these reasons, the Court finds that there are genuine issues of material fact with respect

2    to whether Ortega had been subjected to severe or pervasive harassment. These factual disputes

3    preclude the Court from granting summary judgment to Neil Jones notwithstanding Neil Jones'

4    contention that Ortega did not, as a matter of law, suffer severe or pervasive harassment.

5                    **2.        The Investigation**

6    Neil Jones also moves for summary judgment on the theory that it conducted an adequate

7    investigation and that therefore it is not liable for any of Manzo's harassment of Ortega. Employers

8    are not automatically liable for sexual harassment resulting from the conduct of co-workers.

9    Rather, an employer is liable only where the employer "or its agents or supervisors, knows or

10   should have known of [the harassing] conduct and fails to take immediate and appropriate

11   corrective action." Cal. Govt. Code § 12940(j)(1). Whether an employer's response is sufficient is

12   usually a question of fact. *Bradley v. California Dep't of Corr. & Rehab.*, 158 Cal. App. 4th 1612,

13   1630 (2008).

14   "Once an employer knows or should know of co-worker harassment, a remedial obligation

15   kicks in. An employer is liable for the hostile work environment created by a co-worker unless the

16   employer takes adequate remedial measures in order to avoid liability." *Nichols v. Azteca Rest.*

17   *Enterprises, Inc.*, 256 F.3d 864, 875 (9th Cir. 2001) (internal quotation marks, citations, and

18   alterations omitted). "The measures need to include immediate corrective action that is reasonably

19   calculated to 1) end the current harassment and 2) to deter future harassment." *Bradley,* 158 Cal.

20   App. 4th at 1630. The employer's "obligation actually has two parts. The first consists of the

21   temporary steps the employer takes to deal with the situation while it determines whether the

22   complaint is justified. The second consists of the permanent remedial steps the employer takes

23   once it has completed its investigation." *Swenson v. Potter*, 271 F.3d 1184, 1192 (9th Cir. 2001).

24   "Employers should impose sufficient penalties to assure a workplace free from sexual harassment.

25   In essence, then, . . . the reasonableness of an employer's remedy will depend on its ability to stop

26   harassment by the person who engaged in harassment." *Ellison v. Brady*, 924 F.2d 872, 882 (9th

27   Cir. 1991). Employers therefore have a duty to undertake a remedy that is likely to be effective.

28   *Fuller v. City of Oakland*, 47 F.3d 1522, 1528–29 (9th Cir. 1995). "In evaluating the adequacy of

the remedy, the court may also take into account the remedy's ability to persuade potential harassers to refrain from unlawful conduct." *Ellison*, 924 F.2d at 882. "[M]indful of the difficulty employers face when dealing with claims of harassment, finding themselves between the rock of an inadequate response under Title VII and the hard place of potential tort liability for wrongful discharge of the alleged harasser," courts have held that "a good faith investigation of alleged harassment may satisfy the 'prompt and adequate' response standard, even if the investigation turns up no evidence of harassment." *Harris v. L & L Wings, Inc.*, 132 F.3d 978, 984 (4th Cir. 1997).

Applying these standards here, the Court finds that issues of fact remain with respect to whether Neil Jones' investigation and remedy were adequate. While it is undisputed that Neil Jones investigated Manzo's action after the August 20, 2012 incident, there are substantial factual disputes with respect to whether the remedy that followed the investigation was adequate. Specifically, while Neil Jones suspended Manzo for two days, Ortega contends that her harassing interactions with Manzo continued when their paths would necessarily cross in the workplace. On several incidents after the August 20, 2012 incident, Ortega would see Manzo, and Manzo would stare at Ortega and laugh at her. While Neil Jones contends that the mere fact that it investigated the August 20, 2012 incident is sufficient to shield it from liability for Manzo's actions, the law requires more. An investigation is only sufficient when the investigation concludes that there was no harassment. *Harris*, 132 F.3d at 984; *see also Bradley*, 158 Cal. App. 4th at 1634 (holding that a defendant "cannot rest on its complex investigation process since the statute mandates remedial action designed to *end* the harassment." (emphasis in original)). In contrast, here it is undisputed that Neil Jones' investigation concluded that harassment occurred on August 20, 2012. Such a finding triggers a responsibility to fashion a remedy that puts an end to the harassment. *Nichols*, 256 F.3d at 875.

In addition to the factual issues regarding whether the investigation and remedy of the August 20, 2012 incident were sufficient, the Court finds that there are also genuine issues of material fact with respect to whether Neil Jones adequately investigated complaints about Manzo's conduct before the August 20, 2012 incident. Specifically, Ortega had complained to her immediate supervisor, De Marco, on several occasions about Manzo watching her and female co-

19

workers changing, about Manzo following her around the workplace, and about Manzo saying "Ay, Rosita" to Ortega. Ortega Decl. ¶¶ 12–17, 19–20. Nonetheless, it appears that De Marco was fairly dismissive of Ortega's complaints. De Marco states that she instructed Manzo to stay out of the area where the women were changing, but it does not appear that anyone at Neil Jones ever admonished Manzo regarding the fact that he was making women in the workplace uncomfortable and that he should be mindful. De Marco Depo. at 8–9; *see Ellison*, 924 F.2d at 881 (holding that antidiscrimination statutes "require[] more than a mere request to refrain from discriminatory conduct"). The efficacy of Neil Jones' response to the initial complaints is further undermined by the fact that the August 20, 2012 incident occurred.

The cases Neil Jones relies on are inapposite or distinguishable. Neil Jones relies principally on *Casenas v. Fujisawa USA, Inc.*, 58 Cal. App. 4th 101 (1997), to contend that its investigation was adequate. However, *Casenas* concerns wholly different legal claims. *Casenas* concerns whether the plaintiff was constructively discharged from her employment. The Court of Appeal specifically stated that the plaintiff's appeal "is not about whether [the defendant] sexually harassed her." *Id.* at 112. Moreover, Neil Jones cites cases from the wrongful-termination context to contend that its investigation was sufficient. *See Aguilera v. Baca*, 510 F.3d 1161 (9th Cir. 2007); *Silva v. Lucky Stores, Inc.*, 65 Cal. App. 4th 256 (1998). These cases are inapplicable because the standards of an investigation to prevent future harassment are different than the standards designed to ensure that employees have been given adequate process prior to the termination. Neil Jones further cites *McClung v. Employment Dev. Dep't*, 113 Cal. App. 4th 335 (2003), which is no longer good law. *See McClung v. Employment Dev. Dep't*, 99 P.3d 1015, 1017 (Cal. 2004) (reversing the Court of Appeal).

The remaining cases Neil Jones cites are factually distinguishable. Unlike this case, where the harassment continued even after Neil Jones' investigation, in *Mathieu v. Norrell Corp.*, 115 Cal. App. 4th 1174, 1185 (2004), the complainant indicated to the investigator that the harassment had stopped before the investigation could conclude. *See* Ortega Depo. at 34. In fact, in *Mathieu*, the employer followed up with the complainant and the complainant affirmatively indicated that the problematic conduct had not recurred. Moreover, the Court finds that the remedies that Neil

20

United States District Court
For the Northern District of California

Jones provided here fall substantially below those the Ninth Circuit found satisfactory in *Swenson*. The defendant-employer in *Swenson* twice admonished the harassing employee to stay away from the plaintiff and further moved the harassing employee to a different location within the same facility. *Swenson*, 271 F.3d at 1192. Furthermore, the defendant-employer undertook an investigation, and despite the fact that it found that a charge of sexual harassment could not be sustained, the defendant-employer adjusted plaintiff's work schedule and work assignments to avoid interaction with the harassing employee and offered plaintiff an opportunity to transfer to another facility. *Id.* at 1194. In fact, these changes were effective. The plaintiff in *Swenson* only saw the harassing employee once a month after the new procedures were put in place. *Id.* at 1190.

In the instant case, in contrast, De Marco did nothing from 2009 to August 20, 2012 other than suggest that Manzo place his gloves elsewhere to avoid the female employees' changing area. De Marco merely advised Ortega and her female colleague to ignore Manzo's behavior because Manzo was "an old man." Moreover, even after the August 20, 2012 incident, Neil Jones suspended Manzo for two days. ECF No. 71, Ex. 2. Neil Jones did not permanently alter work duties or locations notwithstanding the fact that Vanderpool believed that Manzo had likely engaged in problematic conduct on August 20, 2012, and there were prior complaints about Manzo's conduct. Vanderpool Depo. at 42. Therefore, Ortega continued to be forced to interact with Manzo, which made matters worse. Ortega Decl. ¶ 29. Furthermore, the Ninth Circuit in *Swenson* indicated that an employer's remedy must be proportional to the alleged harassment and the strength of the evidence that harassment occurred. As the Ninth Circuit stated, "[t]he more egregious the conduct alleged, and the more substantial the proof supporting the allegation, the harder the employer must try to minimize further contact between the two employees . . . ." *Swenson*, 271 F.3d at 1192–93. Here, the alleged harassment was more severe than that at issue in *Swenson*. In *Swenson*, the harassing employee propositioned the plaintiff and grabbed her gloved hand to kiss it. In contrast, here, Manzo's conduct was more severe, as discussed above. Ortega Depo. at 20–23. Accordingly, Neil Jones' remedial obligations were even higher than that in *Swenson*. In light of this heightened burden and the fact that the Court finds that the remedial

21

United States District Court
For the Northern District of California

1    measures taken here fall below those in *Swenson*, the Court finds that there are issues of fact

2    regarding whether the employer's remedy was sufficient.

3    **IV.      CONCLUSION**

4            For the foregoing reasons, the Court DENIES Neil Jones' Motion for Summary Judgment.

5    **IT IS SO ORDERED.**

6    Dated: January 21, 2014

7                                                          _____
                                                           LUCY H. KOH
                                                           United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.: 12-CV-05504-LHK
ORDER DENYING DEFENDANT NEIL JONES FOOD COMPANY'S MOTION FOR SUMMARY JUDGMENT